**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JOSUE MENDOZA-BARRERA,

       Plaintiff,

       v.

THOMAS J. DART, in his capacity as
Cook County Sheriff, ALEJANDRO
PENA, BOBBY CLARK, MARQUETTA
REED, and SAINT ANTHONY HOSPITAL,

       Defendants.

No. 25 CV 464

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Josue Mendoza-Barrera experienced a medical emergency while incarcerated at the Cook County Jail. He was restrained with handcuffs and leg shackles before being transported to Saint Anthony Hospital. There, Cook County Sheriff Officers escorted Mendoza-Barrera to undergo an MRI. Despite hospital technicians twice telling the officers that Mendoza-Barrera could not have any metal on his body, the officers did not remove the shackles. When the technicians started the MRI, powerful magnets pulled Mendoza-Barrera's feet to the top of the machine, twisting his body and causing immense pain. Mendoza-Barrera sued the officers he alleged to be involved in his hospital escort, the Cook County Sheriff, and Saint Anthony Hospital for deliberate indifference to his health and safety, deprivation of medical care, and medical malpractice, respectively. Defendants Sheriff Dart, and Officers Alejandro Pena, Bobby Clark, and Marquetta Reed now move to dismiss the complaint for

failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion is granted in part.

## I.      Legal Standards

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When analyzing the sufficiency of a complaint, I construe it in the light most favorable to the plaintiff, accepting all well-pleaded facts as true and drawing all inferences in his favor. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026).

Rule 8(a) "does not demand detailed factual allegations, but it does require more than mere 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494–95 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 495 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Put another way, the complaint must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

When, as here, a plaintiff sues an officer for money damages under § 1983 and the officer invokes qualified immunity, the plaintiff must "plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Sabo v. Erickson*, 128 F.4th 836, 842 (7th Cir. 2025) (en banc) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (cleaned up). "Simply put, a plaintiff can plead himself out of court

2

on qualified immunity grounds." *Sabo*, 128 F.4th at 842. Dismissal on qualified immunity grounds "is appropriate if, taking the facts alleged in the light most favorable to the plaintiff, the defendant is entitled to qualified immunity as a matter of law." *Id.*

## II.   Facts

Josue Mendoza-Barrera was detained at the Cook County Jail. [44] ¶ 19.[1] On September 20, 2023, Mendoza-Barrera lost consciousness during a medical emergency. [44] ¶¶ 19–20. Unknown jail officials placed Mendoza-Barrera on a gurney, attached shackles to his ankles and handcuffs to his wrists, and transported him to Saint Anthony Hospital. [44] ¶¶ 22–26. While en route, he became semi-conscious, but had no feeling in either of his legs, and felt pain in his head and neck area. [44] ¶¶ 27–28.

Upon arrival, still disoriented and in pain, Mendoza-Barrera was taken to the emergency room, where Saint Anthony medical staff cut off his uniform and assisted him into a hospital gown. [44] ¶¶ 29–32. While changing, Mendoza-Barrera's feet remained shackled together, and afterwards he was handcuffed to the hospital bed. [44] ¶¶ 33–34. Mendoza-Barrera was then wheeled to a separate medical bay where he was met by officers Pena and Reed.[2] [44] ¶¶ 37–38.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the operative Second Amended Complaint, [44].

[2] The Second Amended Complaint alleges that Mendoza-Barrera was met, and later accompanied, by "Officers Pena, Clark, and/or Reed." *See* [44]. As Mendoza-Barrera clarifies in his response to the motion to dismiss, however, records indicate that only officers Pena

Due to the extent of his injuries, medical staff ordered a Magnetic Resonance Imaging procedure for Mendoza-Barrera. [44] ¶ 39. Pena and Reed, along with two MRI technicians, escorted Mendoza-Barrera to the MRI room. [44] ¶¶ 40–42. Once there, Pena and Reed removed the handcuffs—but left the shackles on his legs—and assisted the technicians with transferring Mendoza-Barrera to the MRI bed. [44] ¶¶ 44–47. One of the technicians then said to the officers: "I need all metal off of his body." [44] ¶ 48. The officers checked Mendoza-Barrera's hands and responded: "Yeah." [44] ¶¶ 49–50. A second time, the technician verbally informed the officers that Mendoza-Barrera should not have any metal on his body. [44] ¶ 51. Again, the officers responded affirmatively. [44] ¶ 52. Despite those two express warnings, Mendoza-Barrera's legs remained shackled together. [44] ¶ 53.

The MRI technicians, who also did not ensure that the shackles were removed, then ordered the officers to leave the room for the procedure. [44] ¶¶ 55–56. When the MRI machine turned on, the magnetic coils suddenly and violently pulled Mendoza-Barrera's feet to the top of the machine. [44] ¶¶ 58–60. His feet were slammed against the machine, causing immense pain in his legs from his knees down to his ankles. [44] ¶¶ 60–61. Mendoza-Barrera's body was gradually twisted and pulled for approximately 25 to 30 seconds. [44] ¶ 62. He screamed for help, and the MRI technician turned off the machine. [44] ¶¶ 63–65. As a result of the MRI, Mendoza-Barrera sustained severe bruising, swelling, discoloration, and discomfort

---

and Reed were assigned to that shift at Saint Anthony Hospital on the day of the incident. *See* [55] at 12.

4

in his lower body, and was unable to walk or stand for moderate periods of time following the incident. [44] ¶ 65.

### III.    Analysis

Mendoza-Barrera brings three claims against three different sets of defendants in his Second Amended Complaint: he sues officers Pena, Clark, and Reed under 42 U.S.C. § 1983 for deliberate indifference to his health and safety in violation of his Eighth Amendment rights; he sues Sheriff Dart and unknown Cook County Department of Corrections officers under § 1983 for unconstitutional deprivation of medical care in violation of his Eighth Amendment rights; and he sues Saint Anthony Hospital for medical malpractice. [44]. The medical malpractice claim against Saint Anthony Hospital is not at issue here.

In the Second Amended Complaint, Mendoza-Barrera alleges violations of his Eighth Amendment rights. [44] ¶¶ 73, 81, 93 & 97. But Mendoza-Barrera was a pretrial detainee at the time of the incident. [55] at 3 n.1. Pretrial detainees, as contrasted to those serving prison sentences after a finding of guilt, "remain entitled to the presumption of innocence, and so the Constitution protects them from any *punishment* for the acts that led to their detention." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022) (emphasis in original). Accordingly, a pretrial detainee's claim "arises under the Due Process Clause of the Fourteenth Amendment, which is governed by an objective standard." *Id.* Defendants—using it themselves—do not contest applying the Fourteenth Amendment, so I apply an objective standard. *See also Pittman ex rel. Hamilton v. Madison Cnty., Ill.*, 108 F.4th 561, 570 (7th Cir. 2024)

(applying the Fourteenth Amendment to a pretrial detainee alleging deliberate indifference to medical needs).

Plaintiff must allege, in addition to causation and harm, "that the defendants did not take reasonable available measures to abate the risk of serious harm to [Mendoza-Barrera], even though *reasonable officers under the circumstances would have understood the high degree of risk involved*, making the consequences of the defendants' conduct obvious." *Id.* at 572 (emphasis in original); *Zemlick v. Burkhart*, 164 F.4th 1004, 1010 (7th Cir. 2026). In other words, I ask whether the allegations support a reasonable inference "that the officers *recklessly disregarded* a risk so obvious that they either knew or should have known of it." *Lawler ex rel. Lawler v. Hardeman Cnty., Tenn.*, 93 F.4th 919, 927 (6th Cir. 2024) (emphasis in original).

The facts alleged in the Second Amended Complaint support such an inference. The officers not only escorted Mendoza-Barrera to the MRI room, but also assisted the technicians in physically moving him from his gurney to the MRI bed. It is improbable that they were unaware that Mendoza-Barrera still had metal shackles attached to his legs after the MRI technicians twice asked them to remove all metal from his body. Any reasonable officer would have understood the danger of leaving metal shackles attached to a detainee during an MRI. The officers recklessly disregarded that danger, and it caused substantial injury to Mendoza-Barrera.

The Second Amended Complaint therefore adequately alleges that the officers' conduct violated a constitutional right, but since defendants have raised qualified immunity as a defense, the burden rests on Mendoza-Barrera to also establish that

6

the right at issue was "clearly established" at the time of the officers' alleged misconduct. *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023). "Qualified immunity is an affirmative defense, but once the defendant raises it, 'the burden shifts to the plaintiff to defeat it.'" *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021) (quoting *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019)).

A constitutional right is "clearly established" when the law is "'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *al-Kidd*, 563 U.S. at 741). "In other words, to clearly establish a right, existing precedent must place the constitutional or statutory question 'beyond debate.'" *Sabo v. Erickson*, 128 F.4th at 844 (citation omitted). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, (2004) (per curiam). But it does not protect conduct that, even if not specifically addressed in precedent, is obviously prohibited by a constitutional rule already identified in decisional law. *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020).

Any reasonable officer should have realized that leaving leg shackles attached to a pretrial detainee undergoing an MRI creates a severe risk of bodily harm. Defendants argue that the MRI technicians were the ones with the ultimate responsibility for the procedure, but "correctional staff can escape liability only when they reasonably defer to the judgment of medical professionals." *Smith v. Whitsel*,

7

134 F.4th 962, 966 (7th Cir. 2025). There is nothing in the Second Amended Complaint—nor logic—to indicate that the MRI technicians exercised their medical judgment when leaving the shackles attached to Mendoza-Barrera's legs. To the contrary, the reasonable inference to draw from the facts alleged is that the officers were the only ones with the means to remove the shackles at all. On a motion to dismiss, Mendoza-Barrera has pled sufficient facts to overcome qualified immunity.

Lacking allegations of personal involvement by Cook County Sheriff Thomas Dart and the Cook County Sheriff's Office, Mendoza-Barrera's second claim must satisfy the requirements of *Monell. See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To state a *Monell* claim, the plaintiff must allege "that he was deprived of a federal right" and that he can "trace the deprivation to some municipal action (i.e., a 'policy or custom'), such that the challenged conduct is 'properly attributable to the municipality itself.'" *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (quoting *First Midwest Bank ex rel. LaPorta v. City of Chicago*, 988 F.3d 978, 986–87 (7th Cir. 2021)). "There are at least three types of municipal action that may give rise to municipal liability under § 1983: '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" *Dean*, 18 F.4th at 235 (quoting *LaPorta*, 988 F.3d at 986). Then the plaintiff must also allege "municipal fault" and that the municipal action

8

was the "moving force" behind the federal-rights violation, but Mendoza-Barrera's *Monell* claim fails because he has failed to allege a municipal action.

The Second Amended Complaint includes the conclusory allegation that "written policies and training established and/or approved by Defendant Dart and the Cook County Sheriff's Office [] constitute the official policy of [the Cook County Department of Corrections] and were the moving force behind and caused Mr. Mendoza-Barrera's injuries." [44] ¶ 87. Those conclusory words strung together to parrot the legal standard are neither owed the presumption of truth nor sufficient to make a favorable inference that an express policy existed that caused a constitutional deprivation. Mendoza-Barrera does not allege that similar deprivations have happened to other detainees, so there is no basis for claiming a widespread practice. And the injury was not directly caused by Dart. Mendoza-Barrera's *Monell* claim thus fails.

Ordinarily, a plaintiff whose claim is dismissed under Rule 12(b)(6) is given at least one opportunity to amend. *Ryder v. Hyles*, 27 F.4th 1253, 1258 (7th Cir. 2022). But leave to amend need not be granted when doing so would be futile. *Id.* (citing *Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 684–84 (7th Cir. 2018)). Mendoza-Barrera has already amended his complaint twice, both with the assistance of counsel, and there is no indication that further amendment would provide sufficient allegations of a policy, pattern, or practice to maintain a *Monell* claim.

Officer Reed also argues that any claims against him are barred by the applicable two-year statute of limitations. While the relevant events occurred on

September 20, 2023, the Second Amended Complaint—the first to name Reed—was not filed until October 29, 2025. *See* [44] ¶ 1. Since the amendment naming Reed was not filed until after September 20, 2025, it would need to relate back to the date of an older pleading under Fed. R. Civ. P. 15(c) to avoid the time bar.

> Rule 15(c)(1)(C) allows relation back of amendments when:
>
> the amendment changes the party or the naming of the party against whom a claim is asserted, if [the amendment asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading] and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The "mistake" requirement of Fed. R. Civ. P. 15(c)(1)(C)(ii) is satisfied by "any erroneous belief." *Rodriguez v. McCloughen*, 49 F.4th 1120, 1123 (7th Cir. 2022) (citing *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010)). That's distinct from ignorance, like cases where the plaintiff names a "John Doe" or "unknown agents." *See Herrera v. Cleveland*, 8 F.4th 493, 497 (7th Cir. 2021); *LJM Partners, Ltd. v. Barclays Cap., Inc.*, 165 F.4th 552, 570 (7th Cir. 2026) ("When an initial complaint only names Doe defendants, amended complaints that add the names of defendants do not relate back to the date of the earlier complaint under Rule 15(c)(1)(C)."). Mendoza-Barrera only named Clark, and not Reed, because he erroneously believed that Clark was the other officer with Pena on the day of his

10

MRI—that is a "mistake concerning the proper party's identity" sufficient to fulfill the requirement of the rule.[3]

The remainder of the Rule 15(c)(1)(C) requirements are met because Reed actually received notice within the time allowed by Rule 4(m), and Reed would not be prejudiced in defending on the merits. Defendants must be "served within 90 days after the complaint is filed" unless the plaintiff "shows good cause for the failure," in which case "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Accordingly, "the period provided by Rule 4(m) for serving the summons and complaint" includes any court-ordered extensions. 6A Wright & Miller's Fed. Prac. And Proc. § 1498.1 (observing that, since Rule 15(c) was amended in 1991, "the notice required under the rule no longer is tied to the governing limitations period, but is linked to the federal service period of 90 days or any additional time resulting from a court-ordered extension"); *Williams v. Kincaid*, 45 F.4th 759, 775 (4th Cir. 2022) (Rule 15(c)'s notice period incorporates any court-ordered extension of the 90-day deadline).

Mendoza-Barrera filed his First Amended Complaint on June 13, 2025. [18]. He later moved for an extension of time to serve the First Amended complaint, and I granted that motion, extending the deadline to serve defendants until November 10, 2025. [35]; [36]. Reed returned an executed waiver of service on November 7, 2025,

---

[3] Plaintiff's acknowledgment that Reed was not named—and accordingly Clark was only named—because of mistaken identity indicates that there is no case or controversy between Mendoza-Barrera and Clark. Mendoza-Barrera should inform the court whether he intends to pursue any claims against Clark going forward in the parties' next status report.

11

within the period allowed by Rule 4(m). [49]. Relation back of the Second Amended Complaint to the First Amended Complaint's filing date, June 13, 2025, is therefore appropriate, and the statute of limitations does not bar Mendoza-Barrera's claim against Reed.

## IV.     Conclusion

Defendants' motion to dismiss, [52], is granted in part. Count II against Dart is dismissed with prejudice. Count I may proceed against Pena, Clark, and Reed. The stay on discovery is lifted, the defendant officers must answer the complaint by June 9, 2026, and the parties shall file a joint status report by June 16, 2026, proposing a case schedule and stating plaintiff's decision whether to pursue a claim against defendant Clark.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: May 19, 2026

12